**In the Matter of LAKESIDE UTILITIES, Debtor.**

**Bankruptcy No. BK81–2344.**

United States Bankruptcy Court, D. Nebraska.

Feb. 19, 1982.

Frederick S. Cassman, Omaha, Neb., for Lakeside Utilities.

Steven C. Turner, Omaha, Neb., for RomeRock Ass'n and Cardinal Fed. Sav. and Loan Ass'n.

## MEMORANDUM

DAVID L. CRAWFORD, Bankruptcy Judge.

The findings in this case consolidate issues raised in motions for change of venue of the Lakeside Utilities Corp. Chapter 11 action by Cardinal Federal Savings and Loan Association (Cardinal) and RomeRock Association, Inc. (RomeRock) heard January 13 and January 20, 1982, respectively. Record from the prior hearing was stipulated to be before the court on the merits of the RomeRock motion, the parties remaining free to present additional evidence in the second proceeding.

Because RomeRock's status as a creditor of Lakeside Utilities Corp. (Lakeside) is disputed, the debtor objected to RomeRock's standing to bring a change of venue motion. 11 U.S.C. 1109 and Bankruptcy Rule 116, however, refer not to a "creditor's" but to a "party in interest's" right to be heard. In view of RomeRock's long-standing suit against the debtor over water use easement rights and a potentially valid proof of claim for over $5,000, I find RomeRock to be a party in interest within contemplation of the Bankruptcy Reform Act and Bankruptcy Rules and as such to have standing in this matter.

Both Cardinal and RomeRock argue that venue in the District of Nebraska is improper under Section 1472 of the Bankruptcy Code or in the alternative, that if proper venue lies in this court, the Lakeside reorganization be transferred in accordance with Section 1475 in the interests of justice and for the convenience of the parties. Conversely, Lakeside contends that should the court find venue improper, the case be retained pursuant to Section 1477 of the Bankruptcy Code.

Section 1472 of the Code and Bankruptcy Rule 116(a)(2) provide that corporate venue will lie at the location of the debtor's principal assets or principal place of business. Two standards have been used in 8th Circuit diversity cases to aid courts in making this determination. As a general rule, however, neither the nerve center theory nor operating asset test should be used to the exclusion of the other. Rather, the court suggests that the principal place of business must be based upon the circumstances of each individual case. *Mahoney v. Northwestern Bell Telephone Co.*, 258 F.Supp.

500, (D.Neb.1966) aff'd 377 F.2d 549 (8th Cir. 1967).

In the case at bar, Lakeside is engaged in business activities in only two states, Nebraska and Ohio. Lakeside is an Ohio corporation formed for the purpose of constructing, owning, and operating a water and waste water utility system in Ashtabula County, Ohio. Lakeside also maintains and services the system there.

When formed in 1967, Lakeside was a subsidiary of Development Services, Inc., an Ohio real estate subdivision developer having its general offices in Nebraska and business dealings in Illinois, Missouri, Ohio, Nebraska, New York, and Alabama. Since 1972, Lakeside's executive offices have been located in Omaha, Nebraska. In 1973, Robert Gerlach became president and in 1979 the sole shareholder, the capital stock purchase severing all ties with the parent corporation. He and his wife are the officers and only directors of the Lakeside corporation as it exists today. All books and finance records of the corporation are maintained in the Omaha executive office; all corporate billing originates and payments are made to the Omaha address. Corporate banking is carried on exclusively in Nebraska. Nebraska, then, is the "nerve Center" for Lakeside in the sense that day-to-day business decisions are made and corporate meetings are held at that location. However, as the Mahoney decision describes, any "nerve center" analysis without more " . . . would create a fictional principal place of business where a company's executive offices are located in one state and all of its business is transacted in another." *Mahoney, supra,* 258 F.Supp. at 502. See also *Bullock v. Wiebe Construction Co.,* 241 F.Supp. 961 (S.D.Iowa 1965) (a diversity dispute involving Iowa and Nebraska business activities). To provide a fair assessment, the operating assets factors of the corporation's activities must also be weighed.

Lakeside has listed assets in its reorganization schedules of $10,000 located in Nebraska and approximately $1,980,000 in Ohio. The corporation's income production is tied to the operation of its real property facilities located entirely within Ashtabula County, and each of Lakeside's 2,008 customers is located there. Furthermore, regulation of the rate structure upon which this utility company must operate is accomplished by an Ohio public utilities commission. None of the corporate income is derived from Nebraska.

Lakeside has, in its dealings with the two principal states, asserted its Ohio corporate status. In its "Certificate of Authority" to do business in Nebraska, it lists its principal office as Ohio. In 1981, Lakeside filed with the State of Nebraska a "Foreign Corporation Occupation Tax Report." Although significant, such designations are not dispositive of the issue of a corporation's principal place of business for venue purposes; rather, they are an additional circumstance to be considered.

Further weight in determining a corporation's principal place of business must be given to the character of the corporation, its purposes, the kind of business it conducts and the situs of its physical operations. *Bullock v. Wiebe, supra,* at 963; *Northeast Nuclear Energy Co., v. General Electric Co.,* 435 F.Supp. 344, 345 (D.Conn. 1977).

It is clear that Lakeside's physical operations are entirely within Ohio. Further, its stated purpose is to provide water and water treatment services to Ohio customers. This business is tied to the area it serves. It is incapable of transfer to another location without significant diversification. The character of the Lakeside corporation and its dealings with both Nebraska and Ohio indicate that it's reason for being is to serve Ohio despite the location of its executive and business offices.

> Corporate management and internal corporate activities, such as board of director's meetings . . . [are] entitled to less weighted consideration when the producing assets are completely confined . . . to one state and that . . . is other than the state in which the corporate management and internal activities take place. *Bullock* at 963.

Accordingly, I find proper venue to lie in the Bankruptcy Courts of the State of Ohio.

■ This court, having determined venue improper in the District of Nebraska, is urged by Lakeside to retain the Chapter 11 proceeding in the interest of justice and for the convenience of the parties pursuant to Bankruptcy Code section 1477(a). Recent Bankruptcy courts have developed a series of standards to refine these somewhat broad criteria. To be weighed are the proximity of creditors of every kind to the court, proximity of the debtor, proximity of witnesses necessary to the administration of the estate, location of assets, and most important, the economic administration of the estate. *In re Hadar Leasing International Co.*, 14 B.R. 819, 7 B.C.D. 686 (Bkrtcy.S.D.N.Y.1981). *In the Matter of Louis Marx and Co., Inc.*, 2 C.B.C.2d 49, 6 B.C.D. 300 (S.D.N.Y.1981); *In re Reynolds*, 13 B.R. 658, 7 B.C.D. 1225 (Bkrtcy.N.D.Ga.1981); *In re Greenridge Apartments*, 13 B.R. 510, 7 B.C.D. 856 (Bkrtcy.D.Hawaii 1981); *In re Cole Associates, Inc.*, 7 B.R. 154, 2 C.B.C.2d 582, 6 B.C.D. 565 (Bkrtcy.D.Utah 1980).

■ Each of the listed creditors of Lakeside Utilities, with the single exception of Mr. Gerlach its president, is an Ohio creditor. Despite the fact that all creditors other than Cardinal have filed objections to a change of venue or statements of no preference, I cannot, on that basis alone, retain this proceeding. The creditors cannot claim inconvenience to themselves to litigate in their own state's forum and any potential delay caused by a transfer of business records to the Ohio courts should be minimal.

Should the reorganization be retained by this court, all witnesses with the exception of the Gerlachs necessary to the administration of the estate would be Ohio residents and would be required to travel to Nebraska to testify. The expense of such travel would have a chilling effect upon both efficient estate administration and litigation. While it is true that the Gerlachs will occasionally travel to Ohio, retaining a case for the "convenience of the parties" does not imply a shift of inconvenience from one party to many others.

Economic administration of the estate would be affected most adversely by retention of this case in Nebraska. It is urged upon this court that additional expense and hence depletion of the estate would result from movement to an Ohio forum. Lakeside argues that adversary proceedings are highly unlikely and that prior to its filing for reorganization, it had devised a 100% repayment plan affecting all of its creditors but Cardinal—in short, that the case will be a simple one. While that may indeed be the end result, prediction of ease of administration is hazardous at best and generally unwise. The debt to Cardinal is approximately one half million dollars and will potentially involve complex litigation. Secondly, testimony had indicated that approximately $18,000 in delinquent billings are owed Lakeside each quarter. Lakeside has taken twelve residential development lot as a result of past-due utility charges and as is its practice, sells the lots at a later date. Currently, the corporation holds such liens on several properties in the subdivision. In consequence of these practices, adversary proceedings are possible, not highly unlikely. If the case were retained, all proceedings to collect customer debts would be required to be heard in Ohio pursuant to section 1473(b) of the Code. Lakeside's argument regarding the ease of such transfers is unpersuasive when considered in light of the volume of such claims against delinquent customers.

Finally, the pending 1970 RomeRock suit seeks as its relief a conveyance of the lake and dam and the rescission of Lakeside's water use easement. No money damages are prayed for but costs and expenses in the 12-year suit are sought by RomeRock. Lakeside has agreed that the automatic stay precipitated by its Title 11 filing could be lifted and the RomeRock litigation proceed without its objection. However, the litigation is pending in Ohio and its outcome may have the effect, when combined with the debtor's existing debt structure, of forcing Lakeside into straight bankruptcy or a trustee-supervised Chapter 11. The Ohio courts would provide a more economic ad-

ministration of either the reorganization or liquidation.

Accordingly, I decline to retain this proceeding and find venue proper in the state of Ohio.