**In re Gregory J. BEST, Debtor.**

**Fred T. Bittner, et al., Plaintiffs,**

v.

**Gregory J. Best, Defendant.**

**Bankruptcy No. 99–04688–W.**
**Adversary No. 99–80323–W.**

United States Bankruptcy Court,
D. South Carolina.

Nov. 29, 1999.

Steven R. Anderson, Columbia, SC, for the Plaintiffs.

Lillia Ann Gray, Columbia, SC, for the Defendant.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon Plaintiffs' Motion to Transfer Venue to the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division (the "Motion to Transfer Venue"). Based upon the pleadings presented to the Court and the arguments of counsel at the hearing, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1.  Gregory J. Best ("Defendant") filed for relief under Chapter 7 of the Bankruptcy Code on June 2, 1999.

2.  At the time of the filing of the petition, Defendant had resided in South Carolina for approximately seven months. Defendant's schedules indicate that, from at least 1994 through 1998, Defendant resided in Mogadore, Ohio.

3.  An overview of Defendant's schedules indicates that he has minimal contacts with the State of South Carolina.

4. In his schedules, Defendant listed 293 general unsecured creditors, 256 of which are located in Ohio and only two of which are located in South Carolina.

5. Defendant's Schedule D lists the Ford Motor Credit Company and National City Bank as the only creditors holding secured claims; both secured creditors are located in Ohio.

6. Defendant's schedules reflect that he owns no real property.

7. Defendant's major assets listed in Schedule B consist of the following:

a. A $50,000,000.00 insurance bond from Ford Motor Credit Company subject to a court-appointed receiver in Summit County, Ohio (the "Receivership"), with deposits being made to KeyBank in Mansfiled, Ohio.

b. $ 8,337,500 for his ownership interest in Bodnar Financial Group, located in Summit County, Ohio; this asset also being subject to the Receivership.

c. $50,000 for his 50% ownership interest in Laurex Ltd., also located in Summit County, Ohio and subject to the Receivership.

d. Stocks having total value of $24,337.00. Defendant's schedules do not specify the location of the stocks nor do they indicate whether the stocks are subject to the Receivership.

8. Plaintiffs filed this adversary proceeding on August 31, 1999, challenging Defendant's right to discharge pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), or (a)(6).

9. The Complaint alleges that, for many years, Defendant and others were involved in fraudulent investment schemes.

10. Multiple lawsuits have been commenced against Defendant and others alleging violations of various securities laws. Approximately thirty cases are presently pending against Defendant before courts within the Northern District of Ohio.

## CONCLUSIONS OF LAW

■ Section 157(b)(1) of Title 28 provides bankruptcy judges with the authority to "hear and determine all cases under title 11 and all core proceedings arising under Title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). Core proceedings include "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). Many courts have held that a motion to change venue of a bankruptcy case falls within the category of "matters concerning the administration of the estate" and thus is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A). *See In re Baltimore Food Systems, Inc.,* 71 B.R. 795, 796–97 (Bankr.D.S.C.1986); *see also Couri v. Fisher (In re JCC Capital Corp.),* 147 B.R. 349, 356 (Bankr.S.D.N.Y. 1992); *Storage Equities, Inc. v. Delisle,* 91 B.R. 616, 617 (N.D.Ga.1988); *McLemore v. Thomasson (In re Thomasson),* 60 B.R. 629, 631–32 (Bankr.M.D.Tenn.1986). The court in *In re Thomasson* noted that "[a] motion to change venue of a 'core' adversary proceeding partakes of the quality of the proceeding in which it arises and can be finally determined by the bankruptcy court." The adversary proceeding in the case before this Court, like the adversary matter in *In re Thomasson,* involves a determination of discharge and dischargeability, which is in itself a "core" proceeding; accordingly, the Motion to Transfer Venue is properly before this Bankruptcy Court.

■ Courts have the discretion to transfer cases to another district even where the original venue is proper. *See In re Baltimore Systems, Inc.,* 71 B.R. at 801. Section 1412 of Title 28 provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The movant bears the burden to prove that transferring the case to another district would be for the interest of justice or would be of more convenience to the parties involved. *Id.* In de-

termining whether transfer of venue is appropriate, courts have considered the following factors:

1. the proximity of creditors of every kind to the Court;
2. the proximity of the bankrupt (debtor) to the Court;
3. the proximity of the witnesses necessary to the administration of the estate;
4. the location of the assets;
5. the economic administration of the estate;
6. the necessity for ancillary administration if bankruptcy should result.

*In re Baltimore Food Systems, Inc.,* 71 B.R. at 802.[1]

In *In re Thomasson,* 60 B.R. 629 (Bankr.M.D.Tenn.1986), the court was faced with a very similar factual situation. In that case, a lawsuit was filed in Chicago, Illinois, against the debtor, alleging that the debtor and others had violated securities laws and the Racketeering Influence Corrupt Organization statute. The debtor attempted to avoid the lawsuit by filing a Chapter 7 petition in Tennessee. An adversary proceeding was commenced to determine the dischargeability of certain debts. Plaintiffs moved to transfer venue from the Middle District of Tennessee to the Northern District of Illinois. In determining whether venue should be transferred, the court considered the fact that only two of the debtor's creditors were located in Tennessee while sixty-nine of them were located in the Chicago area and that the debtor owned no assets in Tennessee. The court concluded:

These adversary proceedings involve litigation, transactions and witnesses all within the State of Illinois. Retaining venue in the Middle District of Tennessee will cause extreme hardship to the

real parties in interest, to witnesses and to the trustee who would be forced to prosecute these actions at significant expense and without support from the estate. Delays in prosecution are likely if venue is retained in this district, in light of the distant physical location of witnesses and evidence.

... Factors favoring transfer include that over 95% in number and amount of the debtor's creditors reside in the Northern District of Illinois.

*Id.* at 632; *see also Ford v. Ford (In re Ford),* 191 B.R. 233, 237–38 (Bankr. M.D.Fla.1995) (granting the motion to transfer venue from Florida to West Virginia in an adversary proceeding seeking declaration that judgment debt was nondischargeable after considering that "all transactions under scrutiny took place in Ohio or West Virginia that all witnesses with knowledge of these transactions are in those states and none of them are in Florida"); *In re Weber,* 118 B.R. 441, 444 (Bankr.E.D.Va.1990) (concluding that transfer of venue from the Eastern District of Virginia to the Eastern District of New York was proper because "[s]ubstantially all of the debtor's assets, his residence, attorney, accountant and books and records are located in New York.").

Applying the factors set forth above, this Court finds that transferring the adversary proceeding to the Northern District of Ohio is in the best interest of justice and for the convenience of the parties. The majority of factors, in fact, indicate that transfer of venue is appropriate given the facts of the case. Considering the proximity of the creditors, it is evident that the first factor is met. Defendant's schedules show that all secured creditors and the largest number of unsecured creditors are located in Ohio. Second, the vast

---

1. Courts in other jurisdictions have included other factors to the list set forth in *In re Baltimore Food Systems, Inc.* such as: the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses,

the enforceability of judgment, relative advantages and obstacles to a fair trial, and a state's interest in having local controversies decided within its borders. *See, e.g., In re JCC Capital Corp.,* 147 B.R. 349, 357 (Bankr.S.D.N.Y. 1992); *In re Thomasson,* 60 B.R. 629, 632 (Bankr.M.D.Tenn.1986).

majority of the witnesses and the Plaintiffs involved in the proceeding are residents of Ohio. Third, as reflected in Defendant's schedules filed with the Court, Defendant's major assets are located in Ohio. Fourth, in considering the access to sources of proof, it is evident that, because this case involves the Security Exchange Commission, various banks and accountants, and the appointed receiver; the case is document intensive, and all the records that are essential to the proceeding are located in Ohio.

At the hearing, Defendant argued that his financial situation would further suffer if he had to incur the costs to travel to Ohio to litigate this adversary proceeding. The proximity of Defendant favors the retention of the proceeding in the District of South Carolina. The Court realizes that Defendant, who only recently moved to South Carolina from Ohio, is an individual in bankruptcy; however, the burden imposed on him if venue were transferred to the Northern District of Ohio is minimal in comparison to the cost that would be incurred by all the Plaintiffs and witnesses involved in this case if venue remained in the District of South Carolina.

Even though there is no question that Defendant could receive a fair trial in South Carolina, as Plaintiffs argue, the causes of action alleged against Defendant involve complex principles of Ohio law which might be better resolved within Ohio courts. Furthermore, Defendant's Securities and Exchange license was issued by the State of Ohio; thus, the State of Ohio has an interest in this matter as it relates to Defendant's alleged illegal activities. After considering the interest of justice and the convenience of the parties, the Court finds that, in light of the factors set forth above, venue should be transferred to the Northern District of Ohio. It is therefore,

ORDERED that the Plaintiffs' Motion to Transfer Venue is granted.

IT IS FURTHER ORDERED that any Scheduling Order entered in this Adversary Proceeding is hereby vacated.

AND IT IS SO ORDERED.