**IN RE: The CROSBY NATIONAL GOLF CLUB, LLC, Debtor.**

**Case No. 15–41545–rfn–11**

United States Bankruptcy Court, N.D. Texas, Fort Worth Division.

Signed August 3, 2015

Anderson Tobin, PLLC, Hudson M. Jobe, Quilling, Selander, Lownds, et al, Quilling, Selander, Lownds, Winslett & Moser, P.C., Timothy Andrew York, QSLWM, P.C., Dallas, TX, for Debtor.

## MEMORANDUM OPINION IN SUPPORT OF ORDER GRANTING MOTION OF THE CROSBY ESTATE AT RANCHO SANTA FE MASTER ASSOCIATION TO TRANSFER VENUE TO SOUTHERN DISTRICT OF CALIFORNIA

RUSSELL F. NELMS, United States Bankruptcy Judge

The debtor owns and operates the Crosby National Golf Club, a private golf club in San Diego County, California that is situated in an exclusive, gated community. Shortly after the debtor filed its chapter 11 case in Fort Worth, one of the homeowners' associations in that community, the Crosby Estate at Rancho Santa Fe Master Association ("*Crosby HOA*"), filed a motion to transfer venue of this case to the Southern District of California. I held three days of evidentiary hearings on the motion to transfer venue and rendered my findings of fact and conclusions of law from the bench on June 15, 2015. This memorandum opinion further explains my decision.

### Relief Requested

Crosby HOA moved for transfer of venue first on the basis that venue was im-

proper in Fort Worth under 28 U.S.C. § 1408. Alternatively, it argued that I should transfer venue in the interest of justice or for the convenience of parties under 28 U.S.C. § 1412, Several individual members of Crosby HOA and the golf club supported venue motion. The debtor and its major secured lender, Texas Capital Bank ("TCB"), opposed it.

### Analysis

### A. Because Venue Is Proper in Fort Worth, Venue Transfer Is Not Mandatory

■ Generally, venue is proper in the federal district in which the debtor has its domicile, residence, principal place of business or principal assets for the 180 days immediately preceding the case commencement. 28 U.S.C. § 1408. In the case of a business entity, the state where it was organized is generally its domicile or residence. *See In re Dunmore Homes, Inc.,* 380 B.R. 663, 670 (Bankr.S.D.N.Y.2008)(holding that the state of incorporation is the domicile of a corporation); *See also In re Perry,* 425 B.R. 323, 392 (Bankr.S.D.Tex.2010)(holding that a corporation is a resident of the state of its incorporation). This debtor is a California limited liability company, thus it is domiciled in and is a resident of California. The debtor's principal assets are also in California. So, the only basis for venue in Fort Worth is the debtor's assertion that its principal place of business is here.

■ A debtor's principal place of business is the place "where [the] corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend,* 559 U.S. 77, 80–81, 92–93, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010). It is the "nerve center" of the company, the place from which the company's decisions are actually controlled. *Id.* at 93–95, 130 S.Ct. 1181.

■ Here, the golf club is in San Diego County, California, and the day-to-day management of the club occurs there, with 74 employees in California to keep it operational. But the nerve center of the debtor's operation is here in Fort Worth, where approximately 13 employees provide high level management for the debtor, as well as several other golf clubs across the country. Management operations in the Fort Worth area include accounting, marketing, finance, human resources, strategic decision-making, and other functions. Fort Worth is where the managerial decisions are made and the place from which the debtor's interests are directed and controlled. As such, the debtor's principal place of business is Fort Worth and venue is proper in this district and division. Because venue is proper in Fort Worth, I give deference to the debtor's decision to file here, but I still must decide whether the interest of justice or the convenience of the parties are so compelling that any such deference is negated. *City of Clinton v. Pilgrim's Pride Corp. (In re Pilgrim's Pride),* 2009 WL 4884430, *4–5, 2009 U.S. Dist. LEXIS 117751, *15 (N.D.Tex. Dec. 17, 2009).

### B. The Interest of Justice Is Best Served by Transferring This Case to California

■ When undertaking the "interest of justice" analysis, I am to consider (a) the venue in which the estate can be most efficiently administered, (b) the venue that will promote judicial economy and efficiency, (c) the parties' ability to receive a more fair trial in one forum versus another, and (d) a state's interest in having local contro-

versies decided within its borders. *Think3 Litigation Trust v. Zuccarello (In re Think3)*, 529 B.R. 147, 209 (Bankr. W.D.Tex.2015); *Ries v. Ardinger (In re Adkins Supply)*, 2015 WL 1498856, *5, 2015 Bankr.LEXIS 960, *17 (Bankr. N.D.Tex.2015). I need not give equal weight to all these factors. And, of these four factors, the last is especially important in this case.

Although the debtor may have other reasons for filing chapter 11, the major impetus for this filing is an on-going dispute between the debtor and the homeowners' associations for the neighborhoods surrounding the golf club. The debtor and Crosby HOA had a pending lawsuit when this case was filed. The debtor may also have a dispute with the Avinon homeowners' association. The debtor's golf club is nestled within these neighborhoods and the access to the golf club is controlled by security checkpoints in each neighborhood.

The dispute, in a nutshell, relates to land use restrictions and who is permitted to pass through those security checkpoints to use the golf club facilities. The debtor's business is benefited by allowing not only club members, but also other people and organizations to attend events that can generate revenue for the golf club. The 417 homeowners and 179 club members [1] want to limit access to the community and the club to preserve the safety, tranquility, and exclusive nature of the community and the golf club. The success or failure of this case depends on the outcome of this dispute.

It is difficult to conceive of how the debtor could use the cramdown powers of 11 U.S.C. § 1129(b) to accomplish the goals of (1) easing access to the golf club for non-members, (2) making the golf club more available for non-member events, and (3) modifying the rules for club membership. While it is not certain that these objectives could not be achieved via a plan, it would be highly unusual. This type of relief doesn't sound like the stuff of plans; it sounds more like the stuff of adversary proceedings.

Several facts about the litigation with Crosby HOA are compelling. First, it involves real property in California. The law has always recognized real property rights as being unique and, as such, the state of California has a compelling interest in settling real property disputes that are governed by its laws. *In re B.L. McCandless LP*, 417 B.R. 80, 84 (Bankr.N.D.Ill.2009)(citing *In re Eleven Oak Tower Ltd. Partnership*, 59 B.R. 626, 629 (Bankr.N.D.Ill.1986)); *In re Enron Corp.*, 284 B.R. 376, 392 (Bankr.S.D.N.Y.2002)(citing *In re Baltimore Food Systems, Inc.* 71 B.R. 795, 803 (Bankr.D.S.C.1986)). Second, the membership interests in the Crosby HOA and the golf club are also unique. While the debtor argues that all of these disputes can be resolved quickly and easily by reference to the plain text of a few operative documents, the fact remains that California law will govern regardless of whether the decision is easy or hard. That means that if venue remains here and this court decides these matters, a Texas bankruptcy court would be setting precedent with respect to California real property law.

This happens somewhat routinely in bankruptcy cases and a bankruptcy court should not necessarily shy away from re-

---

1. There is significant overlap between these two groups, in that 90% of the homeowners are also club members and 75% of the golf club members are homeowners.

solving such disputes. But that resolution usually occurs when it is incidental to other larger restructuring issues. When the central issue in the bankruptcy case is the resolution of that dispute and the matter was set for trial in another court prior to a bankruptcy filing, a bankruptcy court should hesitate to take on the task of setting precedent on issues as to which another state has a compelling interest. Because of this concern, I am reluctant to determine the dispute between the debtor and Crosby HOA, and that factor weighs in favor of transferring the case to California.

There is no indication that a California bankruptcy court would be less efficient, less economical, or less fair than I would be in the administration of this case, which, depending on one's view, is either neutral or weighs in favor of venue transfer.

For the foregoing reasons, I conclude that the interest of justice is best served by transferring venue of this case to the Southern District of California.

## C. It Would be More Convenient to the Parties if the Case Were Transferred to California

■ When considering whether venue transfer is more convenient for the parties, I must consider (a) the location and proximity of the parties to the court, (b) the ease of access to proof, (c) the convenience of witnesses, (d) the location of assets, including books and records, (e) the availability of subpoena power over witnesses, and (f) expenses related to witnesses. *Think3 Litigation Trust v. Zuccarello (In re Think3)*, 529 B.R. 147, 211 (Bankr. W.D.Tex.2015); *Ries v. Ardinger (In re Adkins Supply)*, 2015 WL 1498856, *5–6,

2015 Bankr.LEXIS 960, *17–18 (Bankr. N.D.Tex.2015). Of these factors, the proximity of the parties is most significant in this case.

### 1. The Location of Parties and Their Proximity to the Court Favors Venue in California

The debtor argues that even if the litigation with Crosby HOA must be resolved in California, the fact that the debtor's strategic management is in Fort Worth offers ample reason to keep the case here. The debtor emphasizes that its largest creditor, TCB, is here, and the witnesses who would to come to court for routine bankruptcy matters are here. Those are many of the same witnesses who appeared on the debtor's behalf at the hearing on this motion.

While it is true that TCB is a local bank, its presence in Texas is not very compelling in this case. The debtor's dealings with TCB likely will not change very much regardless of where the case is venued. In all likelihood, counsel for the debtor and the bank will still communicate by telephone and emails. They can still conduct meetings in Texas even if the case is in California. Moreover, only a few hearings in the bankruptcy case, if any, will require a representative of TCB to be in attendance. For example, no representative of TCB other than its counsel attended the venue hearings. So, TCB's participation in this case does not point one way or the other.

There is no doubt that the presence of the debtor's management in Fort Worth, some of whom are also principals of Escalante Golf, Inc., a lender to the debtor, augurs in favor of retaining the case here, Not only do routine hearings in bankruptcy typically require testimony by

a corporate representative, but the debtor's management team has shown a marked interest in this case. Five to six members of the debtor's management team routinely attended hearings in this court.

Even so, it is highly unlikely that the dispute between the debtor and the homeowners and club members will be resolved in a courtroom—either here or in California. Regardless of who might prevail in the litigation, litigation does not make good neighbors. This matter needs to be resolved by agreement between the debtor and a majority of the other constituencies, with the bankruptcy process perhaps being used as a means of bringing a dissenting minority in line. The pendency of a bankruptcy case in Fort Worth is counterproductive to any effort at a consensual resolution. Not only has the filing here already given Crosby HOA members and club members the impression that the debtor is hiding from them, but it has given them the impression that the debtor is trying to make it more expensive for them to protect their interests. That does not lend itself to consensual resolution.

But this case involves more than just mere impressions. It involves possibilities that sometimes become reality. It is possible that the debtor will be able to settle with most homeowners, but still have to use cramdown or other litigation to force a settlement on dissident homeowners. It is possible that the debtor may settle with Crosby HOA, but not club members. It is also possible that the debtor may settle with homeowners and the club members but still have trouble with Avinon, the homeowners' association that controls another point of access to the club. It is possible that the debtor may successfully settle with everyone or no one. Each of these outcomes is possible, and each has the common thread that it affects many more people in California than in Texas.

In this case, the homeowners and the club members want to attend hearings, even if they don't participate in every hearing. This desire is not just defensible, it is compelling. Most homeowners and club members will be foreclosed from this opportunity if the case stays in Texas. They will, at best, receive reports from lawyers, which is a poor substitute for being there. So, the proximity of the homeowners and club members to a California bankruptcy court weighs heavily in favor of venue transfer.

It is true that venue in California is less convenient for the debtor's management. But, in addition to simply being outnumbered by interested parties in California, the debtor has ways to mitigate the inconvenience of a case pending in California. First, California bankruptcy courts rely much more on declarations than courts in the Northern District of Texas. Second, the debtor need not send a full management contingent to every hearing; most can monitor hearings via telephone. Third, many hearings do not require a debtor's representative at all. So, while the court does not intend to minimize the inconvenience to the debtor, in the long run a California venue is much less burdensome to the debtor's management than a Texas case is to the homeowners and club members.

## 2. Other Factors Also Point to California

Finally, the debtor argues that its dispute with Crosby HOA is simple and legal in nature and, as such, can be resolved quickly without requiring numerous wit-

nesses to come from California to resolve them. Crosby HOA responds that for approximately two years the debtor has been trying to convince a California state court that this dispute involves a simple matter of law, but has not been successful in doing so. Instead, that court has held that there are genuine issues of material fact that must be tried. If and when that trial occurs, Crosby HOA says the litigation will require more than 20 witnesses, almost all of whom are in California. Although the debtor disputes the necessity of calling so many witnesses, it is clear that a California bankruptcy court is better situated to compel the appearance of those witnesses who are necessary. Moreover, California is more convenient for the witnesses themselves, and that will minimize expenses for all parties.

As discussed above, the debtor's major asset is real property in California, which weighs in favor of transferring venue. Some of the books and records may be in Fort Worth, but while books and records can be transported electronically, witnesses and parties in interest cannot be.

### 3. A Final Word on Proximity of Creditors to the Court

It is an axiom of good legal writing that one should stop when he has said all that needs to be said on the subject in question. I violate that axiom here out of frustration over the tendency of some debtors to file cases in venues that have almost no connection to the debtor or its creditors, a factor that is not present here.

The modem trend in large bankruptcy cases—which this is not—is to stand the proximity of creditors factor on its head when it comes to the debtor's decision of where to file. Although one of the goals of bankruptcy is to facilitate creditor participation, many debtors now file for bankruptcy in locations that are certain to minimize it.

Two Fort Worth companies are prime examples of this trend. Radio Shack, which is .76 miles from this court, filed for bankruptcy in Delaware, as did Quicksilver Resources, which is .12 miles from this court.

Various excuses are given for these remote filings. Few are convincing. It has been said that because these large cases involve mainly the restructuring of large debt held by a few lenders, they should take place where the lenders and their lawyers are located and the judges have expertise with complicated debt facilities. Perhaps it is a measure of my lack of sophistication that I don't consider the day-one dismantling of an electronics retailer an inordinately complex case that can only be overseen by the most expert judge. Still, ignoring the slight to the local judiciary, this argument has gossamer transparency.

The truly hard work of major bankruptcy cases occurs not in the courtroom, but behind the scenes. This is due to the Bankruptcy Code itself, which encourages consensual resolution of matters as opposed to protracted litigation. Because of this, the nuts and bolts of restructuring occurs in much the same way as the negotiation of complicated financial transactions where bankruptcy is not implicated, that is in phone calls, conference calls, texts, emails, and the occasional office meeting. The argument that this way of doing business will or must change once a debtor files for bankruptcy has little factual support.

The argument is also made that it is more convenient to file in New York and

Delaware. The first answer to this argument is a question: "More convenient for whom?" If the answer is the lender, the next question is: "Why are the desires and convenience of a lender who voluntarily chose to do business with a Fort Worth-based company the be-all and end-all of venue determination?" And, of course, the convenience argument loses all credibility when a Fort Worth-based company with a New York-based lender files for bankruptcy in Delaware, The suggestion that it would be more convenient for those parties to meet and attend hearings in Wilmington, Delaware is laughable.

So, what motivates local companies to file so far from their home base? Clearly, part of it is lawyer-driven for reasons that only those lawyers can purport to defend. I doubt, for example, that the president of Quicksilver, whose offices are a two-minute walk from this court, was the one who made the compelling argument that it would be much more convenient for the company if its bankruptcy case were filed 1,400 miles away.

One might ask why we should care where a case is filed as long as the case is successful. The answer lies in the definition of "successful." Even in "successful" cases hard-working people lose jobs, have their retirement cut, or have their claims significantly compromised. And yet, most large cases today are filed with little or no thought given to whether small or medium-sized creditors can appear and be heard in those cases. Some are filed with a goal of precluding easy access to the court by small creditors, especially if those creditors are soon-to-be former employees.

Individual citizens of this country interact with our judicial system primarily in two venues, the family courts and the bankruptcy courts. It is here where they see justice done or not done. And it is important that they have the opportunity to see it.

There is value in witnessing the messiness and frequent tedium of court proceedings. There is value in hearing someone argue why you are right and why you are wrong. There is value in watching a judge wrestle with uncomfortable issues that affect your livelihood. There is value in knowing that even though our judicial system is not perfect, those who serve it work hard to achieve what is fair, just, and right under the law.

No employee at Radio Shack's corporate headquarters took off from work early and walked the few short blocks to this court to observe any proceedings in that bankruptcy case. And that's a shame, not necessarily because the result would have been different, but because that employee might have felt a little better about the result and the system after seeing the sausage being made.

### Conclusion

In an effort to be true to the law and these sentiments I have entered an order transferring this case to the Southern District of California.