### In re SHORTS AUTO PARTS OF WARREN, INC., Debtor.

**Bankruptcy No. 90–02728.**

United States Bankruptcy Court,
N.D. New York.

Feb. 15, 1991.

Memorandum–Decision, Findings of Fact,
Conclusions of Law
and Order March 13, 1991.

---

Grass, Balanoff & Whitelaw, P.C., Syracuse (Mary Lannon Fangio, of counsel), for Tony's Auto Parts & Accessories, Inc. and Antoine Abi Raji.

Menter, Rudin & Trivelpiece, P.C., Syracuse (Dale B. Johnson, of counsel), for debtor.

Richard Croak, Utica, Office of U.S. Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This contested matter was commenced by way of a motion filed by Tony's Parts and Accessories and Antoine Abi Raji ("Movants") seeking to change the venue of this case, Short's Auto Parts of Warren, Inc. d/b/a Short's Auto Parts ("Debtor"), to the Eastern District of Michigan pursuant to 28 U.S.C. §§ 1408 or 1412. Argument was heard on January 22, 1991 in Syracuse, New York and the matter was finally submitted for decision on January 31, 1991.

### JURISDICTION

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b), § 157(a), (b)(1) and (b)(2)(A).

### FACTS

The Debtor filed its voluntary petition for relief under Chapter 11 of the Bank-

ruptcy Code (11 U.S.C. §§ 101–1330) ("Code") on November 6, 1990.[1] Debtor's petition, which is executed by its president, William Fox, Jr. ("Fox"), sets forth the "petitioner's" mailing address as East Syracuse, New York and claims that its principal place of business has been within this district for 180 days preceding its filing. Debtor's "1990 Michigan Annual Report— Profit Corporations" ("Report"), a yearly report executed by Fox which is required under Michigan law and submitted herein by Movants as Exhibit "A", however, sets forth that as of May 15, 1990 the Debtor's "principal business office" was located in Warren, Michigan.

The Debtor, incorporated in 1988 under the laws of Michigan, is a closely held corporation engaged in the retail sale of automobile parts and accessories in the state of Michigan.[2] The Report provides that the Debtor is a wholly owned subsidiary of "Short's Auto Parts, Inc." ("Parent"). The Parent corporation simultaneously filed a petition under Chapter 11 in this Court on November 6, 1990.[3]

A review of the list filed by the Debtor of its twenty largest unsecured creditors reveals that seventeen are located in Michigan, two in Ohio and one in North Carolina. Of the total of forty-eight unsecured non-priority claims listed by the Debtor on Schedule A–3, none appear to be held by creditors located in New York.[4] In addition, the Debtor discloses a total amount of $45,214.45 in taxes owing. Of this total,

the amount of $18,123.99 is owed to the Internal Revenue Service and the balance is owed to various Michigan taxing authorities.

The Debtor's two secured creditors are listed on its Schedule A–2. The Bank of America National Trust and Savings Association ("Bank"), the holder of the largest secured claim in the amount of $950,000 which is characterized as "disputed," is given a California address.[5] The other secured debt in the amount of $164,087.01 is held by Tony's Auto Parts & Accessories, one of the instant Movants, which is located in Michigan.

The Debtor purports that it holds no real property. As for personal property, the Debtor lists seven bank accounts, of which five accounts aggregating approximately $22,394 are located in Michigan. The two remaining bank accounts located in East Syracuse, New York are without funds as of November 5, 1990. Also listed are three vehicles, apparently suited for transporting cargo, given an aggregate value of $1,819. Their location is not disclosed. In addition, the Debtor lists "office equipment" evidently located at four stores within Michigan valued in the aggregate at $49,788, "inventory" with a value of $979,123 and "accounts receivable" of $14,133.

On its "Statement of Financial Affairs for Debtor Engaged in Business" it is indicated that "Debtor" is in possession of its books and records.

1. The Debtor's Schedules and Statement of Executory Contracts were filed thereafter on December 11 and 26 of 1990, respectively.

2. *See* Statement of Financial Affairs For Debtor Engaged In Business at question 1(a). The Debtor listed the locations and names of its businesses: "Short's Auto Parts of Warren" in East Syracuse, New York; "Short's Auto #50" in Rochester, Michigan; "Short's Auto #51" in Clarkston, Michigan; "Short's Auto #52" in Detroit, Michigan and "Short's Auto #56" in St. Clair Shores, Michigan.

3. In addition, a third entity, "Short's All Parts, Inc. d/b/a All Parts Automotive," which is another wholly owned subsidiary of the Parent debtor, "Short's Auto Parts, Inc.," filed its petition under Chapter 11 in this Court on November 6, 1990.

4. The total amount of unsecured debt listed by the Debtor is $851,215.01. An unsecured claim in the amount of $645,000 which is held by Antoine Abi Raji, one of the Movants herein, is characterized by the Debtor as "Disputed/Unliquidated."

5. The Debtor discloses in it Schedules that the Bank's claim is a "joint obligation" which it shares with its Parent and other subsidiary, both of which are debtors in this Court. According to the Debtor, the Bank has security interests in the Debtor's accounts receivable and inventory. Fox's Affidavit, however, indicates a dispute as to the Bank's security interest with regard to related debtor Shorts All Parts, Inc. *See* Fox Affidavit at para. 7.

On its Schedule of Executory Contracts the Debtor lists ten executory contracts. Seven are with persons or entities located in Michigan. Five of the Michigan contracts are leases of real property located in Michigan and the other two are consulting and non-competition agreements. The single executory contract involving a New York entity is a "Management Agreement" with "The Fox Group," presumably named after the Debtor's principal, which has the same East Syracuse address as the Debtor.

## ARGUMENTS

The Debtor opposes the Movants' request for a change of venue, but adds that if the motion cannot be resolved as a matter of law based upon the affidavits and case law, then the Movants should be required to establish the necessary elements through an evidentiary hearing.

Fox filed an Affidavit in Opposition to Change of Venue sworn to on January 17, 1991 ("Affidavit") in which he states that until early June of 1990, the Debtor's business operations were conducted in Michigan and that by mid-June all management was transferred to the current offices in East Syracuse, New York. He contends that the abandonment of the prior principal place of business in Warren, Michigan and the subsequent move to the present location "has resulted in decreased overhead expense and increased operating efficiency." Affidavit at para. 4. He maintains that only "ministerial" tasks are undertaken by the Debtor's employees in Michigan, and additionally that all records, as well as the "primary computer", are kept and maintained exclusively in East Syracuse.

Fox asserts that it is his intent to substantively consolidate the Debtor's case with the cases of its Parent and other subsidiary and that this district is the "only place in which all three proceedings could lawfully maintain a single set of related proceedings." Affidavit at para. 9. Also, he contends that the "high level of intercorporate management activity" makes it crucial that all three proceedings remain in a single forum.

He cautions that should venue be changed, substantial incidental expenses would be incurred such as additional travel, lost working time, locating "some kind of new executive offices in Michigan in order to support the requirements of the bankruptcy cases" and loss of key employees. Affidavit at para. 16. Thus, Fox concludes, a change of venue would diminish prospects for a successful reorganization of the Debtor.

The Bank also opposes a change of venue to Michigan. By letter dated January 29, 1991 from the Bank's Senior Counsel, it argues that because the Debtor's debt to the Bank "is administered through the Bank's offices in New York City," it is "our strong preference" that the case remain closer to that office rather than Michigan where the Bank has no offices. The Bank asserts that a change in venue would hinder the Debtor's reorganization efforts and impair the Bank's position.

Movants contend that venue in this district is improper pursuant to 28 U.S.C. § 1408 and that even if found to be proper, the case should be transferred to the Eastern District of Michigan pursuant to 28 U.S.C. § 1412.

The Movants generally question the timeliness and business justifications motivating the Debtor's transfer of its management functions to this district. They assert that the Bank's support of this Court's retention of venue is insufficient merely because the Bank is the largest secured creditor. Movants argue that the location of most of the unsecured creditors supports placing venue in the Eastern District of Michigan.

Movant further argues that while the present venue would be convenient for Fox, it would significantly hamper the ability of smaller unsecured creditors to participate in the case. Transfer of the case would not impair the Debtor's reorganization efforts, the Movant contends. As it has already incurred the expense to enable it to manage its business affairs in Michigan from this district, its expense in participation in its bankruptcy case venued in

Michigan would not impose too great a hardship.

Vesco Oil Corporation ("Vesco"), a Michigan creditor of the Debtor holding an unsecured claim in the amount of $7,433, also seeks to "join" in support of the Movants' motion. It asserts that it is a "significant creditor of Shorts Auto Parts and their various related entities." See Letter dated January 16, 1991 from Vice President of Vesco to Movants' counsel filed January 28, 1991. Vesco seeks venue changed to the Eastern District of Michigan as "we have done all of our business with Shorts Auto Parts here in Michigan...." *Id.*[6]

## DISCUSSION

Section 1408(1) of title 28 provides the guide for determining whether venue is proper in a given district. This liberal provision permits proper venue in any district in which "the domicile, residence, principal place of business ... or principal assets ... of the person or entity that is the subject of such case" have been located for the 180 days preceding the filing date of the petition or for a longer portion of the 180–day period than in another district. 28 U.S.C. § 1408(1) (1990).

■ So as to not overlook a threshold issue, the Court finds that the time requirement under § 1408(1) has been satisfied. The Debtor's case was commenced by the filing of its petition on November 6, 1990. Calculating from June 7, 1990, i.e., "early to mid-June", to November 6, 1990, the Debtor is able to claim 152 days in its alleged present principal place of business. Assuming, *arguendo*, that the Debtor's principal place of business was in fact moved and established as alleged by the Debtor, 152 days is a longer portion of the 180 day pre-petition period than the Debtor's principal place of business could have been located in Michigan. Thus, the relevant time requirement under § 1408(1) has been met.

The Debtor asserts that the present venue of its case is proper "based upon the fact that Syracuse, New York is the principal place of business of the Debtor." Debtor's Memorandum of Law filed January 22, 1991 at 3. It is not substantially disputed that management operations of the Debtor were relocated from Michigan to East Syracuse, New York during early to mid-June of 1990. Under these facts, the Debtor argues at length that the "financial heart" analysis, which has been developed and enunciated in cases such as *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co., Inc. (In re Commonwealth Oil Refining Co., Inc.)*, 596 F.2d 1239, 1243 (5th Cir.1979) and *In re Baltimore Food Systems, Inc.*, 71 B.R. 795, 800 (Bankr.D.S.C.1986), compels the legal conclusion that East Syracuse, New York is the Debtor's principal place of business for the purpose of venue pursuant to 28 U.S.C. § 1408(1).

■ The Court must, however, conclude before reaching the issue of whether the Debtor's "principal place of business" is located in East Syracuse, New York, that even if true and, therefore, resulting in proper venue of this case, transfer of venue is warranted pursuant to 28 U.S.C. § 1412 (1990) both for the interest of justice and convenience of the parties.

■ Under 28 U.S.C. § 1412, the moving party has the burden of proof which must be carried by a preponderance of the evidence. *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1390 (2d Cir.1990). "Adjudications of motions for transfer are within the discretionary authority of the courts, according to 'an individualized, case-by-case consideration of convenience and fairness.'" *Id.* at 1391 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). The court's power to transfer should be exercised "cautiously."

---

**6.** By correspondence to the Court dated January 22, 1991, Arthur D. Indianer, an officer of Automotive Replacement Parts Co., Inc., the holder of the second largest unsecured claim and Chairperson of the Unsecured Creditors' Committee supports a change of venue "for all three cases." See note 8 *infra*.

*In re Commonwealth Oil,* 596 F.2d at 1241.

Two distinct and sufficient grounds for transfer of venue under 28 U.S.C. § 1412 are the "interest of justice" *or* "convenience of the parties." The replacement of the prior conjunctive with the disjunctive "or" indicates that a "somewhat lesser standard" be satisfied under the present language than by court's applying the prior statute. 1 King COLLIER ON BANKRUPTCY ¶ 3.02[4][c][i] (15th ed. 1990). As the main cases relied upon by the Debtor applied the prior statute which employed the conjunctive language and, therefore, a heightened standard, their helpfulness herein is limited. *See In re Commonwealth Oil,* 596 F.2d at 1247 (applying Federal Rule of Bankruptcy Procedure 116(b)(1)) and *In re Baltimore Food Systems,* 71 B.R. at 803–04 (expressly applying the former conjunctive language).

The "interest of justice" provision included in § 1412 is a "broad and flexible standard." *In re Manville Forest Products Corp.* 896 F.2d at 1391. Its application "contemplates whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness ..." *Id.*

■ As for the "convenience of the parties," the six recognized considerations are: 1) proximity of creditors of every kind to the court, 2) proximity of the Debtor, 3) proximity of witnesses necessary to administration of the estate, 4) location of the assets, 5) economic administration of the estate, and 6) necessity for ancillary administration in the event of liquidation. *See In re Commonwealth Oil, supra,* 596 F.2d at 1247. The paramount consideration is whether the transfer would "promote the economic and efficient administration of the estate." *Id.*

■ While the burden is upon the Movants, it is noted that the factual basis underlying the Movants' arguments are in large part substantiated by the Debtor's schedules and statements filed with its petition. As a result, an evidentiary hearing is not warranted.

a. Proximity of creditors.

None of the twenty largest unsecured creditors are located in New York State whereas seventeen are located in Michigan. In fact, not a single unsecured creditor, regardless of the amount of its claim, is located in New York. Of the parties involved in the eleven listed executory contracts with the Debtor, the only one located in New York is "The Fox Group" which may arguably be an "insider" of the Debtor pursuant to Code § 101(30)(B). Thus, in order to protect their interests, each unsecured creditor and party to an executory lease or contract would be forced to incur the expense of transporting their counsel here which, in view of the size of the typical unsecured claim, would be economically prohibitive.

While the Bank, the Debtor's largest secured creditor, has a "strong preference" that the case remain venued here because its loan is administered through its New York City offices, the proximity of this Court to New York City would still, as a practical matter, require the expense and inconvenience of air travel for court appearances.[7] The incremental expense and inconvenience of travelling to the Eastern District of Michigan rather than the Northern District of New York adds meaning to the Bank's mere "preference" for the present venue. It must be concluded that this degree of inconvenience fails to rise to a level which would prejudice the Bank or impair its ability to participate in the case.

b. Proximity of the Debtor and location of its assets.

The Debtor is domiciled in Michigan. "A corporation's domicile is generally held to be its state of incorporation." 1 King COLLIER ON BANKRUPTCY ¶ 3.02[1][b][ii] (15th ed. 1990). The Debtor was incorporated during 1988 in the State of Michigan.

---

7. Again, it is noteworthy that the location of the Bank's "Senior Counsel" is in the "Legal Department World Headquarters" the only address of which provided on the Bank's letterhead is San Francisco, California.

See Fox Affidavit at para. 3. Thus, the Debtor itself is not located proximate to its present venue.

All of the Debtor's retail stores are in Michigan. All of the office equipment, furnishings and inventory associated with its business activities are located in Michigan. The transactions themselves in which the Debtor has been and, presumably, will continue to be involved are within Michigan.

Not insignificant is the consideration that practically all of the non-bankruptcy legal issues which are likely to arise concerning the Debtor's executory leases and its secured and unsecured business transactions will be governed by Michigan law. It is difficult to characterize as consonant with the interest of justice having all creditors, most of which are located in Michigan, travel to New York in order to have a federal court located in New York apply Michigan law.

c. Proximity of witnesses necessary to administration of the estate and the economic administration of the estate.

The Debtor's management personnel, The Fox Group, is located in East Syracuse, New York. Fox, along with Everett Mastrich, Vice–President and Gloria Wolak, Assistant Secretary and Controller constitute the "management team" for the Debtor and its two related debtors. Other "senior employees" are store managers and district managers charged with the day-to-day operation of retail outlets who are located in Michigan.

The Debtor argues that if venue is changed to Michigan, it will be forced to open a business office in Michigan, incur travel expense and administrative fees which will undo the economic gains achieved by relocating to this district.

It must be conceded that some extra travel will be required by various bankruptcy proceedings. However, at least two factors ameliorate the somewhat overstated negative effects paraded by the Debtor. First, one of the advantages of legal counsel, is to have counsel appear in lieu of the Debtor. The instances requiring live testimony are limited. Of those proceedings where testimony is needed, there is no rule that the witness must be one of the Debtor's management team. The testimony sought may, to the contrary, demand a witness with personal knowledge of a store's daily business activities.

Second, if venued in Michigan, the management team would not be travelling to a foreign location. After all, the actual business which it purports to manage is located in Michigan. It must be presumed that whatever inefficiencies accrue due to a management team member's absence from the Debtor's alleged financial heart in East Syracuse, New York, are at least somewhat offset by their guiding presence in Michigan where the actual business activities of the Debtor are conducted.

Third, the economic administration of the estate should not suffer as a result of a change of venue to Michigan. The Fox Group has allegedly already established procedures for managing the Debtor from its current location in East Syracuse, New York. Therefore, that process should not be significantly disrupted. On a practical level, the economic administration should actually be expedited by the ability of creditors to have access to the proceedings, file claims and motions, appear in court and generally engage in those activities necessary to timely resolution of conflicts.

d. Necessity for ancillary administration should liquidation occur.

This factor has been accorded the least weight in the case law. Such consideration is properly viewed as unduly pessimistic where the typical motion to transfer venue is filed relatively early on in the case when the Debtor is allowed a "breathing spell" and prior to the filing of a plan of reorganization. Thus, the court in *In re Commonwealth Oil, supra,* was justified in summarily disposing of this factor in observing that "anticipation of the failure of the Chapter XI proceeding is an illogical basis upon which to predicate a transfer." *Id.* (quoting *In re Fairfield Puerto Rico, Inc.,* 333 F.Supp. 1187, 1191 (D.Del.1971)).

The intended ultimate disposition of this Debtor, however, warrants more careful consideration of this factor. Fox discloses that it is his intention to substantively consolidate the three corporate entities "into a single surviving entity." Fox Affidavit at para. 9. *See also* Debtor's Memorandum of Law filed January 22, 1991 at 13 ("goal" is to produce from the three corporate entities "a single viable entity"). As neither the Debtor nor its related debtors have yet filed their plans for reorganization, it is unclear whether an actual merger of some type involving the dissolution of two corporate debtors or a transfer of one or both of their assets is ultimately planned. To the extent that a transfer of all or substantially all of a debtor's assets is proposed, venue of the case in the district in which the assets subject to transfer are located becomes a significant factor. The vague expression by Debtor of the possibility of, in effect, liquidation of a debtor appropriately rouses concern in the context of a motion to change venue. The Court is unprepared, however, due to the vestigial stage of these proceedings and vagueness of the intent expressed by the Debtor, to ascribe a given weight in consideration of this factor.

It is thus the Court's view that a change of venue to the Eastern District of Michigan would be, in an overall sense, convenient to the parties by promoting the efficient economic administration of the estate.

It is also difficult to justify how requiring all of the Debtor's secured and unsecured creditors located out-of-state to travel to this district, as well as having a federal court located in New York applying Michigan law, is in the interest of justice. The retention of venue would, in the Court's view, serve to retard the administration of the estate and thwart the goals of "timeliness and fairness" contemplated by consideration of the interests of justice pursuant to 28 U.S.C. § 1412. *See In re Manville Forest Products Corp.*, 896 F.2d at 1391.

As for judicial economy, also strongly considered as an interest of justice, the Debtor places emphasis upon the pendency of this and the other two related debtors in this Court concerning which the Debtor has moved for joint administration. The Debtor argues that even though one of the related debtors carries on business in Ohio and the other related debtor carries on business in Michigan, this district is the only forum where all three cases could "lawfully" be maintained together.

■ A cursory review of the schedules and statements in the related cases reveals that those cases are substantially similar to the instant Debtor with respect to the factors considered herein.[8] The thread common to each of the three cases is that the sole basis upon which their venue is founded is their "financial heart" was allegedly established in this district approximately 152 days prior to filing their petitions. Apparently, even the Debtor would agree that but for the recent relocation to this district of the three person "management team" the present venue would be improper pursuant to 28 U.S.C. § 1408. As to all other factors pertinent to determining proper venue of the instant Debtor, as well as its related debtors' cases, they strongly support a change to another venue which is both proper and in keeping with the language and intent of 28 U.S.C. § 1412.[9] While present venue of the Debtor's case may not be, in a technical sense, improper, that finding alone is insufficient

---

**8.** While the Chairman of the Unsecured Creditors' Committee supports a change of venue for "all three cases," the Court considers herein only the Movants' motion with regard to this Debtor. The Court has noted herein its observations with respect to the propriety of the present venue in the related debtors' cases but is without authority to transfer venue in those cases in the absence of proper motions to change venue regarding each case filed by a party with standing to do so. Under Bankruptcy Rule 1014(a) only a motion by a party in interest may bring about transfer of venue. The Advisory Committee note to Bankruptcy Rule 1014(a) makes clear that "[t]here is no provision for the court to act on its own initiative."

**9.** Contrary to the Debtor's assertion, in the Court's view, under these facts, grounds permitting proper venue for all three cases in the Eastern District of Michigan pursuant to 28 U.S.C. § 1408(2) would arguably exist.

to overcome the interests of justice in this case.

■ To the extent that the outcome herein appears inconsistent with the cases cited and relied upon by the Debtor such as *In re Commonwealth Oil* and *In re Baltimore Food*, it is reiterated that those courts applied significantly heightened legal standards than called for under current law. Moreover, motions for transfer of venue must be considered individually on a case-by-case basis and are, therefore, limited in application by the facts presented by the particular case. *See In re Manville Forest Products Corp.*, *supra*, 896 F.2d at 1391.

Based upon the foregoing reasons, Movants' motion is granted. Accordingly, venue of the instant case (case number 90–02728) is hereby transferred to the United States Bankruptcy Court for the Eastern District of Michigan.

IT IS SO ORDERED.

### MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

By way of its motion filed February 26, 1991 pursuant to Bankruptcy Rules ("Bankr.R.") 7052 and 9024 which incorporate Fed.R.Civ.P. 52(b) and 60(b), respectively, the Debtor seeks to amend the Court's findings of fact and to vacate this Court's decision in its previous Order in the above captioned contested matter dated February 15, 1991 ("Order") due to the need for correction of apparent mistaken assumptions and conclusions of fact that, if corrected, would change the logical outcome of this Court's decision.[1]

The Court's February 15, 1991 Order granted the motion of creditors, Tony's

Parts & Accessories, Inc. and Antoine Abi Raji ("Movants") seeking to change the venue of the Debtor's Chapter 11 case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1412 (1990).

The Debtor requests either an order vacating the Court's previous Order and the issuance of an order denying the Movants' motion to change venue, or conducting an evidentiary hearing if necessary to determine facts sufficient to determine proper venue. Argument was heard on the Debtor's motion in Syracuse, New York on March 5, 1991.

First, the Debtor asserts that in its Order, this Court mistakenly adduced, and then relied upon, the application by the court in *In re Baltimore Food Systems, Inc.*, 71 B.R. 795 (Bankr.D.S.C.1986) of the *pre*amendment version of 28 U.S.C. § 1412.[2] It must be conceded that the *Baltimore Food* court stated the current, and therefore, correct version of 28 U.S.C. § 1412. It did not, however, apply that standard.

As additional authority and guidance, the *Baltimore Food* court cited Bankruptcy Rule ("Bankr.R,") 1014(a), the procedural counterpart to 28 U.S.C. § 1412, which has also been significantly amended since the *Baltimore Food* decision. *See Baltimore Food*, 71 B.R. at 801–02. According to the Advisory Committee note, the 1987 amendments to Bankr.R. 1014(a) "conform[ed] to the standard for transfer in [amended] 28 U.S.C. § 1412." That is, the Rule directs that a court may transfer a properly venued case "in the interest of justice *or* for the convenience of the parties."[3] The *pre*amendment version of Bankr.R. 1014(a), however, imposed a significantly heightened legal standard upon movants. Thus, while the current version of 28 U.S.C.

---

**1.** Fed.R.Civ.P. 52(b) allows a court to "amend its findings or make additional findings and may amend the judgment accordingly."

**2.** The relevant amendment to the statute deleted the word "and" and replaced it with "or" thereby significantly changing the burden of proof required by the statute to establish the grounds necessary to transfer venue where the case is properly venued. The statute now calls for a showing that a change of venue would be either

"in the interest of justice *or* for the convenience of the parties." 28 U.S.C. § 1412 (emphasis added).

**3.** The preamendment language of Bankr.R. 1014(a), and also the language cited by the court in *Baltimore Food*, permitted the transfer of a properly venued case if the "transfer is for the convenience of the parties and witnesses in the interest of justice."

§ 1412 was cited, the applicable Bankruptcy Rule in the *Baltimore Food* decision differed from the current version of Bankr.R. 1014(a).

More importantly, it appears that the *Baltimore Food* court actually applied the heightened standard. The court followed, and relied heavily upon *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239 (5th Cir.1979) which sets forth the factors for consideration in determining the forum of greatest convenience to the parties pursuant to 28 U.S.C. § 1412. In serial fashion, the *Baltimore Food* court discussed each of the relevant factors enunciated in *Commonwealth Oil.* After considering each of the factors, the *Baltimore Food* court appended as a final factor "The Interest of Justice," thereby implying that the interest of justice was considered in conjunction with "convenience of the parties" under 28 U.S.C. § 1412. *Baltimore Food,* 71 B.R. at 802–03. As if to remove any doubt that the court was applying the preamendment conjunctive standard rather than the current disjunctive standard, it observed that the interest of justice must be considered "in addition" to the convenience of the parties pursuant to 28 U.S.C. § 1412. *Id.* at 803. The *Baltimore Food* court accordingly concluded "that the convenience of the parties ... *and* the interest of justice will be best served" by retention of venue. *Id.* Thus, regardless of the standard enunciated by the court in *Baltimore Food,* it actually applied a more heightened standard than that called for under current statutory law. Therefore *Baltimore Food* cannot provide the legal standard which a court may currently rely upon.

▄▄ Second, the Debtor argues that the Court is not entitled to draw legal conclusions as to the convenience of witnesses from the Debtor's schedules and statements.[4] One of the primary purposes of filing schedules and statements is "to give the court information as to the persons entitled to notice." 3 King COLLIER

ON BANKRUPTCY ¶ 521.06 (15th ed. 1990). The statements and schedules which are required to be filed by the Debtor are its own statements as to the identities and locations of those entities who are creditors or otherwise parties-in-interest entitled to notice. The Court does not accept the Debtor's position that ascertaining the location of parties entitled to notice from the Debtor's own admissions is not strongly probative of their location in fact, and therefore, of the proximity of the parties to the forum. Also, the fact that the burden is on the movant to establish the grounds justifying a change of venue does not thereby make inaccessible the debtor's petition, schedules and statements filed with the court as apparently argued here by the Debtor.

The Debtor observes correctly that the various letters of its creditors submitted in support of a change of venue add little to the substantive dispute. The Debtor asserts that *"no creditor* has presented direct evidence on personal knowledge of *any* facts relevant to a determination of the venue question." (Debtor's Motion for Relief from Order filed February 26, 1991 at para. 13 (emphasis in original)). The letters referenced in the Court's Order were from pro se creditors who simply supported a change of venue but did not purport to argue the legal issues. The Debtor's point, however, even if true, does not detract from the factual finding by the Court that participation of a significant portion of the Debtor's unsecured creditors would be impaired by retention of the case.

▄▄ The Debtor finally objects to the Court's reliance upon the addresses provided by the Debtor in its schedules as "legally insufficient" to establish the convenience of the parties in the absence of direct witness testimony. The Debtor argues that live testimony serves to establish "the factual nexus between the raw information of the schedules and the factual conclusions drawn." (Debtor's Motion for Relief from Order filed February 26, 1991 at para. 13).

---

**4.** It should be pointed out here that the Court was, and should be, concerned with the convenience of *parties,* rather than witnesses. 1 King

COLLIER ON BANKRUPTCY ¶ 3.02[4][c][i] (15th ed. 1990).

The Court cannot agree. The Debtor was cognizant of the relevant factors considered in a motion to transfer venue of a case. In particular, one of the factors cited by both of the main cases relied upon by the Debtor, is the "proximity of creditors of every kind to the court." *In re Commonwealth Oil,* 596 F.2d at 1247. As Debtor, it was aware that none of the unsecured creditors which it had listed had New York addresses. In view of this, the Debtor could have made some offer of proof which, if substantiated at a hearing, would have indicated that a change of venue would not be in the convenience of the parties. In the absence of this, the Court was justified in drawing factual conclusions based upon the information set forth by the Debtor in its schedules and statements.

It must also be noted that *Baltimore Food* is not factually "on all fours" with the instant case, as the Debtor asserts. In *Baltimore Food,* the greater number of creditors were located in Maryland, but the creditors with the largest claims, including some located in Maryland, supported retention of the case in South Carolina. Only one of the three Affidavits cited by the court in support of retention of venue in South Carolina was from a Maryland entity. *Baltimore Food,* 71 B.R. at 802. The *Baltimore Food* court while showing very little concern for the convenience of creditors, made the finding that to transfer the case would "result in the involuntary conversion" of the debtor. Here, the same finding was not justified.

In conclusion, while the *Baltimore Food* case has some factual similarities which lend themselves to the instant case, it also has other factual and legal dissimilarities which justify the variance between the outcomes in the two cases.[5]

Ultimately, the question posed by the Debtor's instant motion must focus on whether this Court applied the correct test to the relevant facts, rather than whether this Court's outcome is reconcilable with

*Baltimore Food.* The Court applied the test called for under current statutory law, as well as, to the extent appropriate, that enunciated in the case law, to the facts of this case. The factual findings which it made and which serve as the basis for its legal conclusions in its February 15, 1991 Order were sufficiently supported by the evidence.

Based upon the foregoing reasons the Debtors motions are hereby denied.

IT IS SO ORDERED.

---

5. This is not to say that this Court believes that it would reach the same result as the *Baltimore* *Food* court based upon its facts.